## In re Vernon Dunbar

[647 A.2d 316]

No. 93-276

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed June 17, 1994

210

*Brian L. Porto* of *Plante, Hanley & Gerety, P.C.*, White River Junction, for Petitioner-Appellant.

*Robert M. Butterfield*, Caledonia County Deputy State's Attorney, St. Johnsbury, for Respondent-Appellee.

**Johnson, J.** Defendant appeals from a decision of the Caledonia Superior Court denying his petition for post-conviction relief, which alleged ineffective assistance of counsel and failure of the State to disclose exculpatory evidence. We affirm.

In 1986, defendant was convicted of sexual assault and lewd and lascivious conduct with a child. This Court affirmed his convictions in *State v. Dunbar*, 152 Vt. 399, 566 A.2d 970 (1989). In May 1990, defendant filed a petition for post-conviction relief (PCR) with the Caledonia Superior Court, which conducted evidentiary hearings and subsequently denied the petition. Defendant now appeals to this Court.

Defendant argues on appeal that the trial court erred in concluding that defendant's two attorneys met the standard of reasonable competence. Defendant makes several allegations in support of this argument, the most important of which is his contention that he received ineffective assistance of counsel because his attorneys failed to present a defense that the two child witnesses had been coached by adults. Defendant also argues that the PCR court erred in concluding that the original trial court properly denied defendant's request for substitute counsel. Finally, defendant contends that the trial court erred in concluding that evidence the State failed to disclose was not exculpatory.

On a PCR appeal, we review the findings of fact by the clearly erroneous standard. *State v. Bristol*, 159 Vt. 334, 336, 618 A.2d 1290, 1291 (1992). If there is any credible evidence to support the findings, and the conclusions follow from the findings, this Court will uphold the trial court's judgment. *Id.*

I.

On a petition for post-conviction relief, defendant bears the burden of proving "by a preponderance of the evidence, that funda-

mental errors rendered his conviction defective." *In re Liberty*, 154 Vt. 643, 644, 572 A.2d 1381, 1382 (1990) (mem.). When the claimed error is ineffective assistance of counsel, defendant must show by a preponderance of the evidence that counsel's performance fell below an objective standard of reasonableness informed by prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *In re Pernicka*, 147 Vt. 180, 182–83, 513 A.2d 616, 618 (1986). If that burden is met, defendant must then show that counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 688. A defendant proves prejudice by demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

■ Defendant's burden is a heavy one. Trial counsel are permitted a great deal of discretion in decisions regarding trial strategy, and even the failure of that strategy is not the standard by which a reviewing court will measure trial counsel's competence. *In re Mecier*, 143 Vt. 23, 31–32, 460 A.2d 472, 477 (1983). "[R]ather, we must look to whether such decisions were within the range of competence demanded of attorneys in a criminal case at that time." *Id.* at 32, 460 A.2d at 477. Moreover, as this Court stated in *Pernicka*:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . .

*Pernicka*, 147 Vt. at 183, 513 A.2d at 618 (quoting *Strickland*, 466 U.S. at 689).

Defendant argues that he met his burden by showing that trial counsel failed to pursue what he contends was the only credible defense to the charges of sexual assault: that the child victim and another witness were coached by the victim's cousin, the person to whom the child victim initially reported the events and who wrote down the victim's story at the police station. In support of his contention, he points to trial counsel's failure to pursue a vigorous cross-examination of the child witnesses, J.S. and A.C., and the cousin. Defendant argues that vigorous cross-examination would have highlighted prior inconsistent statements by the children, suggesting

that they did not see or observe the events alleged, and raised doubt in the jurors' minds about the plausibility of defendant, a 440-pound man, committing a sexual assault on a five-year-old girl in the manner alleged. Defendant emphasizes, with citations to the original trial transcript, that counsel were well aware of the issue of coaching and had argued the issue to the trial court on a motion to dismiss the charges.

The difficulty with defendant's argument is that the trial of the case, and particularly the cross-examination of the witnesses, was susceptible to more than one strategy. The proper question is whether trial counsel had any reasonable strategy and whether they pursued it with adequate preparation and diligence. If they did, then defendant cannot meet the *Strickland/Pernicka* test by showing that counsel did not choose the defense he now contends was the only viable approach to the case. See *Pernicka*, 147 Vt. at 183, 513 A.2d at 618 (Court must be wary of concluding with the benefit of hindsight that attorney acted unreasonably after chosen defense proved unsuccessful).

The evidence showed, and the trial court found, that assigned counsel, William Neylon and Charles Hickey, were lawyers experienced in criminal law. Mr. Neylon provided sole representation from the time defendant was charged through a hearing on a motion to dismiss. The motion to dismiss was prompted by Mr. Neylon's deposition of the victim, at which she was unable to talk about the crime. At the hearing, however, the witness was able to speak convincingly of what had happened to her, which prompted the trial court judge to comment that defendant was "getting murdered" by her testimony.

After the hearing and upon defendant's request for additional counsel, the court appointed Mr. Hickey, an experienced criminal defense lawyer. Counsel deposed numerous State witnesses, and filed a motion for individual voir dire and a sequestered jury. Counsel also filed a motion for a pretrial hearing to address important issues related to the child victim, such as the seating arrangement at trial, the scope of questioning of the victim, and the allowable scope of expert testimony. Counsel filed a notice of an alibi defense, and it challenged the State when it attempted to amend the informations to broaden the time of the events from July 1985 to the summer of 1985. They also sought discovery of medical examinations, notes of police officers or Social and Rehabilitation Services workers, and any reports or statements made by experts. With specific reference to

coaching, Mr. Neylon successfully moved to depose the victim's parents in an effort to explore this defense.

Despite considerable pretrial activity on the part of counsel, the trial court found that counsel were unable to produce credible, objective evidence that the children had been coached, and they were faced with a sympathetic victim who was now able to tell her story in a credible manner. Rather than pursue the coaching defense aggressively through cross-examination of the children, which counsel believed might "backfire," they made the tactical decision to try to emphasize the implausibility of the particular events and to rely on an alibi defense. Moreover, they were concerned that overemphasis on the coaching theme might produce prior consistent statements in rebuttal or redirect that would bolster the children's testimony.

The trial court concluded Mr. Hickey did pursue the inconsistencies in the children's accounts of the events and the implausibility of their stories to the extent he felt appropriate, considering the risk of eliciting damaging testimony or appearing to take advantage of the children's lack of sophistication. We cannot agree with defendant's contention that this conclusion was erroneous. At the PCR hearing, defendant's own expert admitted that pursuing prior inconsistent statements in this case called for the exercise of careful discretion because the information that had to be produced to show the inconsistency was prejudicial to defendant. In closing argument, counsel contended that the children were coached, but the argument had to be made without specific evidence, other than that the children were rehearsed for the court proceedings.

Defendant argues, however, that counsel could have avoided the problems inherent in cross-examination of the children by bringing out the coaching defense through the cousin. He points to the fact that the cousin interviewed the victim and took down the victim's statement at the police station. She later added an interlineation to the statement directly implicating defendant as "the big fat man," which defendant argues is evidence of coaching that should have been explored. Again, counsel's strategy was to limit the cousin's testimony on hearsay grounds, and they made repeated unsuccessful objections to it. Counsel then made the judgment at trial that her brief testimony had not been particularly damaging and that it was best to leave it alone. The testimony of the State's expert witness at the PCR hearing supported this strategy.

■■ The trial court's findings and conclusions demonstrate that at each stage of the pretrial proceedings and the trial counsel were

prepared, were aware of the relevant issues in child sexual assault cases, and that counsel made informed and calculated decisions about trial strategy and the cross-examination of the child witnesses and the cousin. This strategy included a consideration of how best to use the "coaching" defense. Although other counsel might have tried the case differently, the critical evidence with which defendant is concerned was put before the jury, albeit not with the emphasis he now argues. The PCR court was entitled to credit the expert testimony produced by the State that, although "coaching" may be an effective defense in some cases, defense counsel did as much as the facts permitted in this case. We cannot say that the trial court's thorough analysis of defendant's attorneys' performance, its consideration of the expert testimony in the PCR hearing, and its review of the original trial transcripts and exhibits should have compelled a different conclusion. Consequently, we affirm the trial court's conclusion that counsel's performance did not fall below a reasonable standard of competence in the cross-examination of these witnesses.

■ Defendant also takes issue with the cross-examination of psychologist Donald Hunt, the State's expert witness at the original trial, who testified that bedwetting and loss of appetite are symptoms of post-traumatic stress syndrome that frequently result from sexual abuse. Defendant claims that defense counsel should have made a stronger challenge to the syndrome evidence and produced an expert for the defense. This claim is without merit.

Although Hunt had a therapeutic relationship with the victim, the fact of the relationship was not known to the jury. His testimony was entirely general, and he offered no opinion relative to the victim. Hunt testified on cross-examination that the victim's symptoms could result from causes totally unrelated to sexual assault, which was the major point to be made. Thus, the PCR court could properly conclude that, given the limited nature of the testimony and the point made on cross-examination, the examination was adequate, and defense counsel made a reasonable decision not to produce their own expert.

Defendant makes one additional claim with respect to Hunt. The original trial court failed to order the State to reveal to defendant information about the therapeutic relationship between Hunt and the victim. Defendant argues the court's action deprived him of the opportunity to present, by foreclosing an inquiry that might have revealed material relevant to the credibility of the victim. Counsel failed to preserve this issue for appeal and, therefore, the claim was rejected on direct appeal. *Dunbar*, 152 Vt. at 411, 566 A.2d at 977.

The PCR court found that the legal right to the materials sought was not clear at the time of trial, and there was no evidence to suggest that, even if the right existed, the State had possession of any records relating to the victim's therapy. See *State v. Percy*, 149 Vt. 623, 634-35, 548 A.2d 408, 415 (1988) (denying access to information obtained in therapeutic relationship and not held by State). Therefore, the PCR court could properly conclude that counsel did not fail to meet prevailing standards of competence when they failed to preserve this issue for appeal.

Defendant also argues that a reasonably competent lawyer would have called a physician to testify, as an expert witness, to the inherent improbability of sexual relations occurring between a 440-pound man and a five-year-old girl in the manner alleged. This claim is without merit. The court found, and defendant does not dispute, that trial counsel did consult with a physician about plausibility and were told such contact was possible. Accordingly, counsel pursued this argument without expert testimony.

In short, defendant's principal claims on ineffective assistance of counsel relate to the cross-examination of witnesses. Lawyers may disagree about the tactics that were pursued, but the essential nature of the disagreement is a strategic one. We conclude that the PCR court's findings are not clearly erroneous and its conclusions are supported by the findings. Cf. *In re Mecier*, 143 Vt. at 30, 460 A.2d at 476 (cross-examination essentially tactical decision by trial counsel). Because defendant has not met his burden on the first prong of the *Strickland/Pernicka* test, we need not reach the issue of prejudice. *In re Trombly*, 160 Vt. 215, 218, 627 A.2d 855, 856 (1993).*

## II.

Defendant argues next that the PCR court's conclusion that defendant's request for substitute counsel on the eve of trial was properly denied was clearly erroneous and ignored compelling evidence that defense counsel were inattentive to defendant's case and ineffective in preparing it. We disagree.

The record reveals that defendant moved for new counsel five days before the trial was to begin. The trial court held both an in camera

---

* Defendant also argues on appeal that a reasonably competent attorney would have elicited testimony from Dr. Toll, a pediatrician who had examined the victim, about whether the victim had vaginal scarring. Defendant bears the burden of affirmatively showing what the potential evidence would have been and how it would have produced a different result. *Brown v. McGinnis*, 922 F.2d 425, 428 (7th Cir. 1991). Defendant failed to make any such showing.

hearing with defendant and a hearing in open court with counsel present. Defendant's allegations amounted to a "strained relationship" with counsel, in part over defendant's refusal of a plea agreement and his perception that his counsel had determined he was guilty. The original trial judge found, however, that the attorney-client relationship was still viable, that defendant was engaged in the conduct of his case and that the attorneys were exercising reasonable professional judgment on defendant's behalf. The motion was denied.

■ It is within the trial court's discretion to assign substitute counsel when there is a complete breakdown in the attorney-client relationship or counsel is incompetent. *State v. Ahearn*, 137 Vt. 253, 263, 403 A.2d 696, 703 (1979). With respect to the attorney-client relationship, there must be more than a strained relationship or "lack of rapport." See *State v. Bruley*, 131 Vt. 366, 367, 306 A.2d 672, 673 (1973). In exercising its discretion, the trial court may take into account whether the defendant has unduly delayed in seeking a new assignment and whether the defendant is seeking merely to delay. *Ahearn*, 137 Vt. at 263, 403 A.2d at 703.

■ No evidence was produced at the PCR hearing to suggest that the trial court's ruling deprived defendant of the effective assistance of counsel. To the contrary, the evidence showed that counsel consulted with defendant on numerous occasions and solicited his opinions, that defendant was involved in defense preparations and kept informed of developments, and that despite disagreements, there was no serious breakdown in the attorney-client relationship. The most that was shown was that defendant was not completely satisfied with counsel's approach to the case. With respect to incompetence, we have already discussed that trial counsel were neither inattentive nor ineffective, although defendant may have disagreed with their tactical approach to the case, and were competent to handle a sexual assault trial. Considering the late filing of the motion by defendant, and the trial court's view that the attorney-client relationship was viable, it was not clearly erroneous for the post-conviction court to hold there was no denial of effective assistance of counsel.

## III.

Finally, defendant claims that the post-conviction court erred in concluding that the State did not violate the rule in *Brady v. Maryland*, 373 U.S. 83 (1963), and V.R.Cr.P. 16 when the State failed to disclose potentially exculpatory evidence. See *State v. Lewis*, 151

Vt. 38, 40, 556 A.2d 59, 61 (1988) (duty imposed under Rule 16 and *Brady* is identical). We disagree.

The evidence in question was the original handwritten statement by the cousin, and is an account of the victim's story as told to the cousin. The handwritten statement referred in several places to the perpetrator as "the man." An interlineation added the words "big fat" between "the" and "man" where "the man" appeared in the statement. Defendant argues that the added words suggest an adult's attempt to strengthen the statement by making an identification of defendant, who was obese, and was relevant to the "coaching" defense. What defendant received was not the original handwritten statement, but exactly the same statement in typed form. The typed form included the words "big fat," but did not indicate that it was an interlineation. The handwritten statement was not in the possession of the state's attorney.

█ Defendant and the State stipulated to the fact that the original statement should have been disclosed to defendant under V.R.Cr.P. 16(a)(1), but that the failure to do so was not the product of bad faith. The question, then, is whether the evidence was "favorable to the accused and material to the accused's guilt or punishment." *State v. Goyette*, 156 Vt. 591, 597, 594 A.2d 432, 436 (1991). The evidence is material only if there is a reasonable probability—a probability sufficient to undermine confidence in the verdict—that the result of the proceeding would have been different had the evidence been disclosed. *Id.* at 597–98, 594 A.2d at 436.

There is no evidence in the record below to suggest that this evidence would have provided damaging impeachment material for the defense. The cousin testified, and the trial court found, that "big fat" was added in the nature of a correction to the statement. This is supported by the victim's own tape-recorded description of her assailant as the "fat man," given at the police station before the cousin wrote a statement of what the victim had told her. Far from being material to the defense, the revelation of this evidence at trial would have served only to bolster the State's case.

*Affirmed.*