In Re: Anthony Kinonian, No. S0658-03 CnC (Norton, J., May 26, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                                    SUPERIOR COURT
Chittenden County, ss.:                        Docket No. S0658-03 CnC

IN RE ANTHONY KINOIAN

ENTRY

Petitioner seeks post-conviction relief from a series of convictions he received for credit card fraud and false pretenses. He argues that his defense attorneys in each case failed to provide him with effective assistance of counsel. The State opposes this petition because petitioner has not shown that his attorneys' performances dipped below the prevailing professional standards or how any errors they may have made materially affected his convictions. Both sides agree that there is no dispute as to the

material facts of this case. Each side, however, has moved for summary judgment in their favor as a matter of law.

The relevant facts of this case are fairly straightforward. In May of 2001, petitioner purchased goods from at least two locations, Wal-Mart and Hannaford Brothers', with stolen credit cards. At his first arraignment, petitioner was charged with credit card fraud and false pretenses for purchases that he made at a Hannaford Brothers' grocery store on May 31. The evidence against plaintiff included several eyewitnesses, store videotape, items in petitioner's possession that corresponded to the stolen credit card purchases, and finally the stolen credit card used to make the purchases recovered from the trunk of his car. Petitioner's attorney Karen Shingler struck an agreement with the court on petitioner's behalf for him to plead guilty to the misdemeanor count of credit card fraud while the state dropped the felony false pretense charge. At that time, the State had not filed charges against petitioner for his purchases at Wal-Mart, and the Shingler agreement did not address the contingency that he might be.

About a year later, petitioner was arraigned a second time for the purchases that he made at Wal-Mart. As before, petitioner was charged with false pretenses and credit card fraud but was also charged with several other crimes including larceny, trespassing, and driving without a license. The State had the same amount of evidence with the exception of the stolen credit card but with further eyewitness evidence linking petitioner to its theft. Petitioner's attorney for this case was Robert Backus who arranged with the court for petitioner to plead no contest in return for a favorably structured sentence. Unlike before, the State did not agree to drop the felony false pretense charges.

Petitioner's challenge to his second conviction is that Attorney Backus failed to challenge the State's dual charge of credit card fraud (13 V.S.A. § 2002) and false pretenses (9 V.S.A. § 4043). According to

petitioner, the two statues overlap and § 2002, the more specific and newer statute, impliedly overrules § 4043, to the extent of credit card fraud. Thus, petitioner argues, Backus provided ineffective assistance to petitioner when he did not challenge the State's charge and attempt to remove the repealed felony count of § 4043. Without going into the merits of this claim of implied repeal, the question here is whether Attorney Backus failed in his professional duty by not raising this potential defense. In support of his claim, petitioner submits the affidavit of Attorney Arthur Rubin who claims that he has filed such motions as a defense attorney in Vermont and considers them to be an important defense.

It is worth noting that Attorney Rubin is less than clear as to how successful he has been with such motions. "When confronted with such a Motion, the State would be forced to either allow the Court to dismiss the case, or, more likely, to amend the charge to the misdemeanor . . ." This sentence in the context of Rubin's affidavit may mean that every time he has raised this issue the State has conceded or it may mean what he expects the state to have done in petitioner's case. Regardless of how this is interpreted, the import is essentially that making the implied repeal argument is a strong strategy.[1] Rubin's affidavit stops short, however, of saying that § 2002 actually has overruled § 4043 or that making such an argument would have guaranteed dismissal. Indeed, petitioner does not cite to any cases either from the Vermont Supreme Court or from the trial courts upholding this interpretation and noting the repeal.

---

[1] Rubin goes further than this conclusion in his affidavit, but the court looks to such affidavits only for the evidence that they raise and not the conclusions. Pierce v. Riggs, 149 Vt. 136, 137–38 (1987). Rubin's affidavit creates some evidence that Backus and Shingler's actions may have, in one way, violated the first Strickland prong but they are not decisive on this point even for the purposes of summary judgment.

The distinction is that the implied repeal argument, while important, is still just a trial strategy that Backus may or could have considered but was far from a slam-dunk issue. Petitioner's burden in this case is to show that Backus's failure to raise the argument "fell below an objective standard of reasonableness informed by prevailing professional norms" and that Backus's "deficient performance prejudiced the defense." In re Dunbar, 162 Vt. 209, 212 (1994) (citing Strickland v. Washington, 466 U.S. 668, 687–88 (1984)). These two prongs mean that petitioner must prove that Backus' decision not to argue was wrong at the time and not in the light of hindsight. In re Dunbar, 162 Vt. at 212. The ultimate question is not whether Backus would have been successful in raising the implied repeal argument, but whether failing to raise it was tantamount to incompetence. Id. (court looks to a range of competence within a given situation).

At the time, the evidence of petitioner's guilt was fairly strong and any defense aiming for acquittal might be best described as quixotic. Backus choose to work out a plea agreement with the prosecution and the court that, while not dismissing the specific felony charge, reduced petitioner's jail time significantly. This, of course, was for a case where petitioner was facing several different charges and the potential for a heavy sentence on top of his prior ten-year sentence. In light of these circumstances, petitioner's argument, that Backus should have filed a motion to drop one charge because of implied repeal, smacks of Monday-morning-quarterbacking. There was no guarantee that Backus's arguments would have been accepted by the court or that the state would have backed down from the charge. Even if they did, the State might have been less inclined as a result to strike a deal with Backus and petitioner. That might have resulted in a higher overall sentence for petitioner. While this is merely a possible result, the evidence shows that petitioner's arguments are no more probable of an outcome. As such, petitioner fails to carry his

burden of demonstrating that his defense was prejudiced by the strategy Backus adopted. In re Dunbar, 162 Vt. at 212. Therefore, petitioner's claim for ineffective assistance of counsel is dismissed.

Petitioner's other claim is against Attorney Shingler for failing to inquire or investigate further into possible facts that might be, and indeed were in 2002, brought up later as charges against him. Specifically, petitioner points to the fact that his two sets of convictions stem from the same investigation of the same stolen credit card spree that he went on in May 2001. He argues that the evidence used to convict him in November 2002 was in the prosecution's hands in July 2001, and thus should have been found by Shingler through an exercise of diligence. As previously noted, however, the State had not charged petitioner with any further counts at the time of Shingler's representation. Furthermore, petitioner had not told Shingler about any of the other credit card frauds, and the Williston police investigations (on which the 2002 charges were based) had not been concluded or filed with the State. All Shingler could have discovered through a review of the record was that there was evidence that petitioner's credit card fraud was wider spread than the May 31 incident at Hannaford Brothers'. Should this have triggered a duty to investigate further and forced the state to either include them in the plea agreement or counsel her client against accepting the agreement?

As before, there is a strong presumption that petitioner must overcome to show that Shingler's performance, "absent the distorting effects of hindsight, fell within the wide range of reasonable assistance." In re Plante, 171 Vt. 310, 313 (2000). At the time of sentencing, Shingler had obtained a very good plea agreement for petitioner. This court is not prepared to rule as a matter of law that Shingler was further obliged to trace down and remove any possible further prosecutions for separate frauds. The facts show that apart from the police report available to Shingler

suggesting other crimes, there was no evidence at the time, apart from petitioner who presumably knew about his other crimes, to make Shingler aware of future prosecutions. This is simply too attenuated to create a duty or to put Shingler's failure below the standard of reasonable assistance. Furthermore, petitioner provides no evidence to show that he would not have taken his plea agreement even if Shingler had warned him that he might still be exposed to future prosecution. Such a failure is fatal to petitioner's case. In re Fisher, 156 Vt. 448, 461 (1991). Therefore, petitioner's second claim of ineffective assistance of counsel must also be dismissed.

Based on the foregoing, petitioner's motion for summary judgment is denied. The State's motion for summary judgment is granted. Petition for post-judgment relief is dismissed.

Dated at Burlington, Vermont_____, 2005.