In re: Burt Allen, No. S0898-10 CnC (Crawford, J., Nov. 8, 2012)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

SUPERIOR COURT                                   CIVIL DIVISION
Chittenden Unit                                  Docket No.: S0898-10 CnC


In re: Burt Allen


### DECISION ON CROSS MOTIONS FOR SUMMARY JUDGMENT

Petitioner Burt Allen is currently serving a sentence of eight to fifteen years after accepting a plea agreement for one count of lewd and lascivious conduct with a child in violation of 13 V.S.A. § 2602. He appealed the sentence, which was imposed following a contested sentencing hearing, arguing that the sentencing court erred by sentencing him based upon statements in the presentence investigation (PSI) referring to his digital penetration of the victim. The Supreme Court affirmed. *State v. Allen*, 2010 VT 47, 188 Vt. 559 (mem.). Mr. Allen now seeks post-conviction relief pursuant to 13 V.S.A. §§ 7131–7137, arguing that defense counsel rendered ineffective assistance by failing to object to the allegation of penetration in the PSI, and that there is a reasonable probability that petitioner would have received a lighter sentence if counsel had made the objection. Mr. Allen requests that this court correct his sentence.

The State has filed a motion for summary judgment, arguing that petitioner cannot establish the prejudice element of his ineffective-assistance-of-counsel claim because he cannot prove that the sentencing court relied on the allegation of penetration in reaching its sentence. Mr. Allen opposes the State's motion, and has also filed a motion for summary judgment, in support of which he has filed an affidavit by Paul Volk, his attorney at the change-of-plea and at sentencing, as well as the expert disclosure of Stephen L. Saltonstall dated March 1, 2011.[1]


### BACKGROUND

The following facts are undisputed unless otherwise noted. On November 28, 2007, Detective Jannine Wright interviewed Mr. Allen's step-granddaughter, the victim in this case. The victim reported that, while she and her family were at Mr. Allen's home for Thanksgiving dinner, she went to his shop and, while there, he suggested that they

---

[1] Attorney Saltonstall has opined that "Mr. Allen received ineffective assistance of counsel at the sentencing proceeding, and there is a substantial probability that Mr. Allen would have received a lesser sentence if he had received effective assistance of counsel." Attorney Saltonstall's statement is a legal conclusion. The court does not believe it raises any material factual issue.

"play doctor," and that he put his finger "a little bit inside" her. On December 5, 2007, Detective Michael Burns interviewed Mr. Allen. According to Det. Burns's affidavit, Mr. Allen, after repeatedly denying inserting his finger inside the victim's vagina, eventually admitted that he did insert his small finger "just a little bit."

On February 7, 2008, Mr. Allen was arraigned on one count of aggravated sexual assault with a victim who was under the age of 13, in violation of 13 V.S.A. § 3253(a)(8). The information charged that, on or about November 22, 2007, Mr. Allen inserted his finger into the victim's genital opening.

At a change-of-plea hearing on October 15, 2008, Mr. Allen entered into a plea agreement pursuant to which he agreed to plead guilty to a reduced charge of lewd and lascivious conduct with a child under 13 V.S.A. § 2602. The information as amended charged that he "ha[d] contact between his hand and [the victim's] vulva." The State's description of the offense, to which petitioner agreed, was as follows: "On or about November 22, 2007, the defendant took his granddaughter to his workshop and they were going to be playing some games. He set her up on a desk and put oil on his hands, some sort of lubricant from his workshop, and actually touched her vaginal area." The plea agreement called for a presentence investigation (PSI) and a sentencing hearing, with the State being capped at arguing for 10 to 15 years to serve and petitioner free to argue for less but no less than one year to serve.

The completed PSI was filed with the court and distributed to the parties on December 29, 2008. The PSI summarized the victim's November 28, 2007 statement, as well as Mr. Allen's December 5, 2007 statement. The PSI recommended a sentence of eight to fifteen years, all suspended except for eight years to serve. The PSI explicitly stated that "[t]he rationale for this request is as follows: after a thorough discussion considering several factors, ultimately, the focus continued to revert back to Mr. Allen's minimization of the harm caused to the victim and her family and his lack of empathy." PSI (State's Ex. F) at 15. On January 7, 2009, Mr. Allen filed a sentencing memorandum and response to the PSI, in which he focused on rebutting the contention that he had minimized his conduct and the impact it had on the victim, and highlighted mitigating factors, such as Mr. Allen's age, health, and remorse. Mr. Allen's response did not, however, include any objection to the mention of penetration in the PSI.

At the February 9, 2009 sentencing hearing, the State argued for a sentence of ten to fifteen years to serve. In doing so, the State gave an account of the crime, then emphasized Mr. Allen's inconsistent statements concerning the event, including differing explanations as to why he did what he did, and the fact the he did not believe that what he had done had caused any harm to the victim. After the prosecutor made her closing

2

remarks—during which she did not mention penetration or argue that penetration should be considered in determining the appropriate sentence—the following exchange took place:

> THE COURT: There's—there's several references in Ms. Goldstein's report [the PSI] and the affidavits and statements of everybody, to the effect that the defendant put his finger into this child's vagina. Is—is—did I read those correctly, Ms. Hardin?

> MS. HARDIN: The contention was that—well, first of all, [the victim] wouldn't be able to testify whether he went inside or not. The contention was, on the part of the defense, that he was somehow bullied into making that statement after repeatedly being asked by the police officer.

> THE COURT: Well,—

> MS. HARDIN: That would have entailed motions to suppress and all sorts of motions to dismiss. And—and we, in making this plea agreement, decided that we would forego those and—and not have the child have to come in and testify at a 12(d) hearing and this is the way we resolved the case. But yes, in fact, those were the—the affidavit was replete and the interview was replete with that. It was initially charged as a sexual assault.

> THE COURT: Well, I understood that. And—and the plea, obviously, has limited the potential incarceration. Seventy—Title 13 says that the sentencing court is to consider the nature and circumstances of the crime. And the affidavits, submitted by the defendant, and the statements that are made by the adults who talked to the child later, are—are a part of this record. Okay. Okay.

> MS. HARDIN: And, Your Honor, just to add, I would say that the—the use of the lubricant was pretty clear as to what the intent was.

Sentencing Tr. 35:7–36:13, Feb. 9, 2009 (State's Ex. H). Attorney Volk proceeded to argue for a sentence of one to five years, all suspended but one year, but did not address the penetration issue. In response, the State argued only that Mr. Allen's allocution further illustrated his lack of empathy for the victim.

3

In handing down its sentence, the trial court stated at the outset that it found the original description of the offense given by the victim to be reliable and recounted her version of the events:

> The Court finds that on the date of this incident, that this eight year old was alone with her step-grandfather in his workshop, that he suggested that they play doctor, that he picked this eight year old up and laid her on a towel that he had placed on the surface of his desk. That he told her to pull her pants down to her ankles and then he looked into her vagina. He then dipped his finger into some—what the child described as slippery stuff. He held her vagina open with one hand and with the other he put some of the stuff into the middle of her vagina. His finger, as the child described it, was a little bit inside, but wasn't in that far. She asked him to wipe the slippery stuff off because she thought it might burn her. He did so. The defendant told her not to tell anyone.

*Id*. 45:20–46:9. The court went on to explain the basis for its sentence:

> The defendant, in his interviews, has minimized what he did. He says that the incident probably had no impact on the child, unless people would tell her otherwise.
>
> Words can't describe how serious an offense this is, because of the betrayal of this innocent child. Much of the defense arguments has gone to the point of saying, well, this is only one incident. Whether it—you know, it's—it's—it's only one incident, but it's an incident that has caused so much damage that a severe sentence must be imposed. This is a horrible offense.
>
> The common law says I must consider general deterren[ce], specific deterren[ce], rehabilitation, and punishment.
>
> Contrary to what the defendant has represented to this Court, his act will have a dreadful impact on this child. I don't wish it, but I've been in this business many, many years and I'm sorry to say that the prognosis is difficult for this child.
>
> The statements that I heard in Court here from the parents show that the bad impact is already being felt by this little girl.

> I've dealt with many people as adults who have been damaged in this way as children and the consequences of this act cannot be exaggerated.
>
> When punishment is imposed by a Court in Vermont, it must reflect the harm that has been done. The harm that is done here is almost beyond calculation. And this was not an impulsive act, this was a deliberate act that was designed and executed in several steps; the towel, the lubricant, were waiting for this eight year old.

*Id*. 46:15–47:21. The court sentenced Mr. Allen to eight to fifteen years to serve, and stated that "[t]he defendant is immediately in custody." *Id*. 47:22–25. According to Attorney Volk, Mr. Allen was taken into custody before the end of the sentencing hearing, and Attorney Volk was required to ask that Mr. Allen remain in court until his sentencing hearing concluded. Volk. Aff. ¶¶ 7–8, June 18, 2012.

Attorney Volk also asserts that the sentencing judge became "beet red" as he spoke and was "clearly worked up and agitated." *Id*. ¶ 5. Attorney Volk states that the judge "was hunched over and leaned forward when he spoke and saliva was literally coming out of his mouth as he spoke." *Id*. ¶ 6. Nowhere in its explanation for its sentencing decision did the court mention the mitigating information that was presented on Mr. Allen's behalf, such has his lack of a prior criminal record or an evaluation suggesting that he was at low risk of reoffending.

Attorney Volk then objected that "[t]his was a plea to an L&L and the Court's conclusions are clearly beyond the offense conduct relative to alleged penetration." *Id*. 48:17–19. He also asserted that the allegations of penetration "were never attested and were never probed" and that the State had conceded that the victim would not be able to substantiate penetration. *Id*. 48:20–49:2. The court responded as follows:

> I don't think that's true at all, Mr. Volk. I think that what Ms. Hardin said is something I've heard repeatedly. The State chose not to put this child through a trial so that there could be an aggravated sexual assault conviction. They chose to spare her that. And—and the parties negotiated the settlement, which, frankly, was less than Mr. Allen would have received if the State had chosen to put this child through such an ordeal.

*Id*. 49:3–11. Attorney Volk then requested that Mr. Allen be given thirty days to put his affairs in order and to communicate with the Department of Corrections about his medical needs. The court denied the request, stating "He's in custody. You should

5

communicate with Corrections, please, please, immediately about the medical needs, okay." *Id*. 49:18–50:1.

As mentioned above, Mr. Allen appealed the sentence and the Supreme Court affirmed. See *State v. Allen*, 2010 VT 47, ¶ 13, 188 Vt. 559 (mem.) (concluding that "defendant waived any objection to the court's consideration of the statements in the PSI regarding penetration" because he was required under V.R.Cr.P. 32(c)(4) to raise objections to facts contained in the PSI *before* sentencing).

ANALYSIS

"A petitioner bears the burden of proof on a PCR petition and must show, 'by a preponderance of the evidence, that fundamental errors rendered his conviction defective.'" *In re Combs*, 2011 VT 75, ¶ 9, 190 Vt. 559 (mem.) (quoting *In re Liberty*, 154 Vt. 643, 644 (1990) (mem.)). "Vermont uses a two-part standard for evaluating an ineffective assistance of counsel claim—a test that is essentially equivalent under the United States and Vermont constitutions." *Id*. (citing *In re Russo*, 2010 VT 16, ¶ 16, 187 Vt. 367). "Ineffective assistance of counsel cases first require that the petitioner show by a preponderance of the evidence that defense counsel's performance 'fell below an objective standard of reasonableness informed by prevailing professional norms.'" *Id*. (quoting *In re Dunbar*, 162 Vt. 209, 212 (1994)). "If this first burden is met, petitioner must further show that counsel's performance prejudiced the defense by demonstrating a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. (quotation omitted). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *In re LaBounty*, 2005 VT 6, ¶ 7, 177 Vt. 635 (mem.) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). In the sentencing context, the petitioner must show that there was a reasonable probability that he would have received a different sentence. *Porter v. McCollum*, 130 S. Ct. 447, 453 (2009).

For purposes of summary judgment, the petitioner has made out a prima facie case on the first element of the PCR claim: evidence of ineffective assistance of counsel. Statements in the PSI about whether penetration was part of the offense conduct went unchallenged. The decision on direct appeal noted that defense counsel had waived any objection. There may have been tactical reasons why experienced defense counsel would not have drawn attention to this aspect of the case, especially when the issue of penetration was not raised by the State at sentencing. Viewed in the light most favorable to the petitioner, however, there is sufficient evidence of ineffective assistance to require a fact-based decision after a hearing.

6

The same cannot be said of the evidence on the second element: a reasonable probability of a different outcome. Only the sentencing judge knows for sure whether the references to digital penetration affected his sentence, and he cannot be asked. *In re Wilkinson*, 165 Vt. 183, 187 (1996) (concluding that permitting the sentencing judge to testify at a PCR proceeding "would undermine both the propriety of the judicial office and the fairness of post-conviction relief proceedings"). The court hearing the PCR case can only review the statements made by the sentencing judge on the record and compare these with the information that was properly before him at sentencing.

In its motion, the State argues that Mr. Allen cannot establish that the sentencing court relied on the finding of penetration in reaching its sentence, and thus cannot make the requisite showing of prejudice. The State contends that the sentencing court made it clear that the sentence was based on the deliberate nature of act, the betrayal of the victim and the enormous harm caused to her, and Mr. Allen's minimization of or failure to acknowledge that harm. Mr. Allen asserts that, because the sentencing court asked about them, the allegations of penetration clearly concerned the court. Mr. Allen further notes that the court found as a fact that he penetrated the victim's vagina with his finger, and then went on to state that the crime was serious beyond words and "horrible." He also asserts that the judge did not mention any of the mitigating evidence in rendering the sentence, and that the sentence imposed is unusually harsh for lewd and lascivious conduct with a child.[2]

The court concludes that Mr. Allen cannot show that there is a reasonable probability that he would have received a lesser sentence if defense counsel had objected to the allegations of penetration in the PSI. The bulk of the argument from the parties and the court's explanation of the basis for its sentence contained no mention of penetration. Although the court described the crime as "serious" and "horrible," the court's stated reason for that description was that the crime was a betrayal of an innocent child. The court also mentioned Mr. Allen's failure to acknowledge the harm to the victim and the deliberate nature of his conduct. To the extent the court imposed a harsh sentence, its stated reasons for doing so had nothing to do with penetration, and the sentence was less than the ten-to-fifteen years that the State could seek.

The sentencing court was undoubtedly aware of the statements in the PSI regarding penetration. The judge asked about this issue at the time of sentencing. However, petitioner cannot show, by a preponderance of the evidence, that the court would have imposed a lesser sentence if it had not considered those statements. There is

---

[2] In his cross-motion for summary judgment, Mr. Allen also contends that the sentencing judge was clearly prejudiced by the allegation of penetration because of: (1) the judge's appearance and demeanor, and (2) the fact that the judge remanded Mr. Allen to custody even before the end of the hearing.

no basis for petitioner's suggestion that the sentencing court was so offended by the penetration allegations that it ignored potentially mitigating evidence.[3] As the Supreme Court noted, the sentencing court "adequately considered all of the relevant factors in this case." *Allen*, 2010 VT 47, ¶ 14. Absent any suggestion of penetration, the court would have been within its discretion to impose the sentence it did, and the court's specific explanation of the basis for its sentence would support the sentence even without consideration of the statements in the PSI relating to penetration.

The court rejects Mr. Allen's contention that the sentencing court's statement that "the defendant is immediately in custody" proves that the court was prejudiced by the penetration issue. It would be erroneous for a sentencing court to order a defendant who has not been disruptive to the proceedings and who has not voluntarily absented himself to be removed from his sentencing hearing before the proceeding had concluded. See V.R.Cr.P. 43. However, it is not entirely clear from the record that that is what happened in this case. Even assuming that Mr. Allen was in the process of being removed from the courtroom before Attorney Volk objected,[4] there is no indication in the record or in Attorney Volk's affidavit that the sentencing judge had ordered that action.

The court also rejects the argument that the sentencing judge's appearance and demeanor can be employed to infer that the sentence was harsh because of the issue of penetration. The conduct that the petitioner admitted to in pleading to the reduced charge of lewd and lascivious conduct with a child and which was properly before the judge at sentencing could reasonably be expected to cause a strong expression of condemnation. The sentencing judge's "beet red" complexion and evidence of anger cannot be traced to a single aspect of the crime. An experienced judge, sitting on a felony case, could be expected to be moved and angered by the petitioner's conduct.

The Vermont Supreme Court reached a similar result in *In re Martel*. There, the petitioner was convicted of one count of sexual assault on his girlfriend. No. 2001-174 (Vt. Mar. 2002) (unpublished mem.), available at http://www.vermontjudiciary.org/d-upeo/eo01174.aspx. He sought post-conviction relief, arguing, among other things, that

---

[3] The fact that the sentencing court did not specifically mention the mitigating evidence does not mean that the court ignored it. E.g., *United States v. Amedo*, 487 F.3d 823, 833 (11th Cir. 2007) (reasoning that even though the district court's sentencing order did not mention arguably mitigating evidence, the reviewing court could not say that the district court's failure to discuss that evidence meant that the court erroneously ignored or failed to consider it); *People v. Samayoa*, 938 P.2d 2, 45 (Cal. 1997) ("The trial court's mere failure to mention expressly all evidence presented in mitigation . . . does not mean the trial court ignored or overlooked such evidence, but simply indicates that the court did not consider such evidence to have appreciable mitigating weight.").

[4] The record reflects that, shortly after the sentencing judge stated that Mr. Allen was "immediately in custody," Attorney Volk stated to Mr. Allen: "Burt, just hold on a second. You need to see this or hear this." Sentencing Tr. 48:5–6.

his trial counsel was ineffective for failing to correct an allegedly "incredible" statement in the PSI report to the effect that he had threatened his attorney. On appeal from the trial court's denial of his petition, the Supreme Court affirmed, concluding that the transcript of the sentencing hearing revealed that the trial court imposed the sentence it did based on the seriousness of the offense, prior convictions, and repeated violations of probation. *Id*. Similarly, in *State v. Knutson*, the petitioner argued ineffective of counsel on the grounds that counsel failed to obtain rulings on the content of a PSI report that she claimed implied greater offenses than the offenses to which she pleaded. No. 05-1802, 2006 WL 3019229, at *3 (Iowa Ct. App. Oct. 25, 2006). The appellate court found "nothing in the record indicating the trial court's sentencing decision was improperly influenced by the cited inaccuracies." *Id*. at *4. For the reasons described above, the result should be the same in this case.

## ORDER

The State's motion for summary judgment is granted. The petitioner's motion for summary judgment is denied.

Dated at Burlington this ___ day of November 2012.

_____
Geoffrey Crawford,
Superior Court Judge