NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2019 VT 28

No. 2017-261

In re James Burke                                              Supreme Court

                                                               On Appeal from
                                                               Superior Court, Chittenden Unit,
                                                               Civil Division

                                                               October Term, 2018


Robert A. Mello, J.

Matthew F. Valerio, Defender General, and Emily Tredeau, Appellate Defender, Montpelier, and
  James T. Burke, Pro Se, Camp Hill, Pennsylvania, for Petitioner-Appellant.

David Tartter, Deputy State's Attorney, Montpelier, for Respondent-Appellee.


PRESENT:  Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.


¶ 1.     **SKOGLUND, J.**     Petitioner James Burke sought post-conviction relief (PCR) alleging that his trial counsel, Attorney Daniel Maguire, provided ineffective assistance because of a conflict of interest. The PCR court denied petitioner's motion for summary judgment and granted the State's motion for summary judgment based on the court's determination that Attorney Maguire did not provide ineffective counsel. Petitioner appeals and, for the reasons below, we affirm.

¶ 2.     Pertinent to this appeal are the circumstances surrounding petitioner's representation by counsel at trial, which were summarized by this Court in State v. Burke, 2012 VT 50, ¶¶ 2-13, 192 Vt. 99, 54 A.3d 500. We briefly reprise the history here. A warrant for

petitioner's arrest for sexual assault was issued in July 2004; he was arrested and arraigned in October 2005; and his trial commenced in May 2010. During the time between his arraignment and trial, petitioner filed nearly 200 motions, the vast majority of which were filed pro se in writing and orally on the record. These included motions to disqualify three trial court judges, a motion to disqualify a prosecutor, and nineteen motions for sanctions. Petitioner also expressed discontent with various appointed counsel at multiple points in pretrial proceedings. During discovery, he requested, was provided with, and then dismissed appointed counsel. Then, midway through depositions in 2009, petitioner once again requested and was provided with appointed counsel— this time it was Attorney Maguire, who ultimately represented petitioner at trial.

¶ 3. Throughout pretrial proceedings, the trial court reprimanded petitioner many times for his disruptive language and behavior—petitioner often insulted and cursed at his appointed counsel, the state's attorney, and the court during hearings. In April 2008, defendant allegedly threatened the deputy state's attorney after a day of depositions and was arrested for obstruction of justice. During a hearing in 2009 when petitioner again sought to dismiss his appointed counsel, the trial court questioned whether petitioner was competent to proceed pro se. As the judge observed: "He interrupted everyone, including the judge, continuously. He strung together sentences without the slightest pause as he worked himself into a frenzy and remained in an excited state throughout the hearing." Based in part on psychiatric evaluations in 2004 and 2006, the trial court ultimately determined that petitioner was competent to stand trial. However, it concluded that given his previous misconduct, it would be "naive to expect that [petitioner] would control himself were he to represent himself during trial." And because the right to self-representation is not absolute, the trial court found that petitioner had forfeited his right to represent himself through his continued disruptive behavior.

2

¶ 4.    Which brings us to the issue on appeal.  During jury draw, outside of potential jurors' presence, Attorney Maguire expressed his desire to withdraw as petitioner's counsel, citing threats of physical violence to himself and his family:

> [Petitioner] has filed and the Court has copies of numerous letters to me—written letters to me and I have filed them with the Court in which he has threatened me personally.  He has threatened my family.  He has advised me that if I—that when he gets out of jail, he will find my family and he will kill me or them.
>
>   He has filed numerous lawsuits which are mostly a nuisance but I do take seriously.  I've had to retain counsel to defend them.  As part of those lawsuits, recently my father died. . . . [Petitioner] filed a motion saying that it was a lie my father didn't die.
>
>   I don't like [petitioner], Judge, and I know I don't have to like my clients but we needed to respond to that so I needed to submit a Death Certificate to prove that, in fact, my father died.
>
>   . . . .
>
>   The Sheriff who is in the courtroom today . . . filed for me an Affidavit which he related that [petitioner] had made threats after one of the hearings last fall and that he felt in his experience that [petitioner]'s threats were credible and that they were concerning . . . .
>
>   I have no relationship with [petitioner] and maybe for obvious reasons for those of you who are listening to him today. . . . Those differences . . . [are] irreconcilable.  My view of the case differs from [petitioner].
>
>   . . . .
>
> I have an ethical concern that I'm not so sure that I can zealously represent him at a trial.
>
>   . . . .
>
>   What I spoke about with the Professional Conduct Board attorney and I'm going to share it with you now is that I'm not so sure that I want to see him out of jail.
>
>   . . . .
>
> I don't believe that I can adequately represent him in any scenario right now.  I understand the Court wants to get this case done but I feel like I'm sort of getting rolled over here.  I want to withdraw and

3

> I think based on the history of this case he should be allowed to proceed pro se.

The trial court denied Attorney Maguire's motion to withdraw, but allowed a deputy sheriff, described as a legal assistant, to be seated between Attorney Maguire and petitioner throughout the trial.

¶ 5.    Following a four-day jury trial in May 2010, petitioner was convicted of sexual assault.  After trial, Attorney Maguire again moved to withdraw, which the trial court granted.  Petitioner appeared pro se for his presentence investigation (PSI) interview and sentencing hearing.  In October 2010, petitioner was sentenced to eighteen to twenty years to serve.  This Court affirmed his conviction in June 2012.  See Burke, 2012 VT 50.

¶ 6.    Petitioner filed his pro se motion for postconviction relief in February 2013.  In March 2015, Attorney Paul Volk, an expert appointed by the trial court and compensated by the Defender General, filed an expert-opinion report with the PCR court after an independent legal review wherein he explained that he found ineffective counsel for some, but not all, of the reasons alleged in petitioner's original petition.

¶ 7.    In October 2015, petitioner filed a motion for leave to amend the original petition.  The State responded, noting that the proposed amended petition was thirty-four pages long and contained almost one hundred numbered paragraphs and that Attorney Volk had already conducted an exhaustive examination of the original petition and of the record, had provided a written report, and had been deposed twice on topics not within his expert report.  The State did not oppose the motion to amend but requested an order that petitioner "submit an explanation of exactly how his amended petition differed from the original petition, in order to save the State and [Attorney Volk] the necessity of combing through the pending and the proposed amended petition in order to determine the nature of the proposed changes."  The State also requested that petitioner be required "to state which claims, if any, would be dropped, and which claims, if any, would be added" and

4

noted that it would be in a position to respond to the motion to amend upon receipt of clarification. Petitioner never responded to this filing. In December 2015, the PCR court denied the motion to amend, stating that the motion "offer[ed] no explanation as to why amendment [was] required nearly three years after the case was filed."

¶ 8. In May 2017, the PCR court issued its order denying petitioner's motion for summary judgment and granting the State's motion for summary judgment. The court explained that petitioner's "PCR petition rehashe[d] his dissatisfaction with the criminal trial court's rulings and with the Supreme Court's decisions on the issues that he appealed." Therefore, the court limited its review to the four claims of ineffective assistance of counsel it could discern from the original petition and clarified that it would not address those claims that had already been decided on direct appeal or claims potentially raised in the amended petition.

¶ 9. The PCR court determined that petitioner articulated four reasons why Attorney Maguire provided ineffective assistance, and reviewed the following claims: Attorney Maguire allegedly (1) "failed to select a fair jury because the jury included individuals with previous experience with sexual assault or other sexual offenses"; (2) "did not argue for instructions regarding intoxication and diminished capacity and did not retain a forensic toxicology expert"; (3) "had a personal conflict and a degree of animosity toward [petitioner] that prevented [Attorney] Maguire from providing proper counsel"; and (4) "failed to bring evidence that [c]omplainant allegedly stole items from [petitioner] and had allegedly made two other false complaints about sexual misconduct."

¶ 10. The PCR court relied on the correct summary judgment standard—summary judgment is appropriate where there are not genuine issues of material fact and any party is entitled to judgment as a matter of law. See H & E Equip. Servs., Inc. v. Cassani Elec., Inc., 2017 VT 17, ¶ 10, 204 Vt. 559, 169 A.3d 1308. For PCR petitions based on ineffective counsel, the trial court outlined the Strickland two-part standard where the petitioner must show: (1) "by a preponderance

5

of the evidence that counsel's performance fell below an objective standard of reasonableness informed by prevailing professional norms"; and (2) prejudice "by demonstrating a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." In re Dunbar, 162 Vt. 209, 212, 647 A.2d 316, 319 (1994) (citing Strickland v. Washington, 466 U.S. 668, 687-88 (1984)).

¶ 11. The PCR court determined that the State was entitled to judgment as a matter of law regarding petitioner's first claim—ineffective assistance of counsel for allegedly failing to select a fair jury because the jury included individuals with previous experience with sexual assault or other sexual offenses. Petitioner's expert, Attorney Volk, testified that the manner Attorney Maguire conducted voir dire was not ineffective assistance of counsel.

¶ 12. Next, the court considered petitioner's second claim—ineffective assistance of counsel for failure to argue for instructions on voluntary intoxication or diminished capacity and failure to employ forensic-toxicology experts. The court explained that even if it construed Attorney Volk's opinion that Attorney Maguire's failure to hire a forensic toxicologist fell below the prevailing professional norm—Attorney Volk said he could not opine as to whether the voluntary-intoxication defense would have been viable because the evidence was not developed— there was no evidence to support the "prejudice" prong of the test with any degree of specificity because "the results of forensic toxicological evaluation remain highly speculative at best." Further, Attorney Maguire stated that "there was no indication that [petitioner] was so intoxicated that he didn't know what was going on" such that it "would impact the case," and that petitioner's ability to recall details did not support his assertion that he was "acutely intoxicated." Attorney Volk agreed with Attorney Maguire that petitioner's testimony at trial was inconsistent with an intoxication defense. Thus, the court found the State was entitled to summary judgment on this claim.

6

¶ 13. Third, the PCR court addressed petitioner's assertion that personal conflict and animosity resulting in a lack of communication between Attorney Maguire and petitioner constituted ineffective counsel. The court described Attorney Volk's ultimate opinion: Attorney Maguire's failure to seek petitioner's input in investigation and development of the case, inability to communicate with petitioner regarding petitioner's testimony, and lack of advice to petitioner regarding the PSI interview or report undermined confidence in the conviction as well as the sentence imposed on petitioner. The State argued that personal animus, or even extreme acrimony, is not sufficient to demonstrate that Attorney Maguire's performance fell below the standard. The PCR court concluded that petitioner could not succeed on this claim of ineffective assistance of counsel for two reasons. First, even if Attorney Maguire had more effectively counseled and prepared petitioner for the competency examinations, testimony, and PSI interview, there is no evidence that demonstrates or predicts how petitioner would have done anything different in those contexts, or even that he would have been capable of behaving differently. And second, even if Attorney Maguire and petitioner's antipathy resulted in a breakdown in communication, petitioner's own behavior manufactured the breakdown in communication. Therefore, the PCR court concluded that the State was entitled to summary judgment on this claim.

¶ 14. And finally, the PCR court addressed petitioner's fourth claim—failure to bring evidence that complainant allegedly stole items from petitioner and had allegedly made two other false complaints about sexual misconduct—and once again concluded that the State was entitled to summary judgment on this claim.[1] The court noted that Attorney Volk testified that Attorney Maguire's failure to inquire further on cross examination into complainant's alleged theft of

_____

[1] The PCR court also briefly addressed the issues raised by petitioner that had already been decided on direct appeal. It concluded that absent exigent circumstances, a PCR court was not a forum to relitigate issues that have already been appealed and adversely decided. Therefore, to the extent that petitioner raised issues already decided in his direct appeal, he could not succeed on those claims in his PCR petition and the State was entitled to summary judgment on those claims.

7

petitioner's property was not ineffective assistance. As to the claim that Attorney Maguire should have attempted to argue for admission of evidence that complainant made false allegations regarding sexual misconduct of others, the trial court had issued a pretrial ruling excluding this evidence. The rulings on this evidence were affirmed on direct appeal. See Burke, 2012 VT 50, ¶ 21.

¶ 15. On appeal, this Court is challenged to discern the discrete claims petitioner raises for review and which of those claims have been properly preserved below and briefed for this Court. In addition to the brief filed by the Defender General on petitioner's behalf, petitioner filed supplemental pro se briefing and a printed case, which is nearly 1500 pages. Upon our review of the record developed during trial and PCR proceedings and the briefing on appeal, this Court will limit its review to the four claims addressed by the PCR court below and petitioner's argument that the PCR court erred in denying his motion to amend his petition.[2]

¶ 16. When reviewing a grant of summary judgment in a PCR proceeding, this Court applies the same standard as the trial court, viewing the facts in the light most favorable to the nonmoving party. In re Hemingway, 2014 VT 42, ¶ 7, 196 Vt. 384, 97 A.3d 896. Summary judgment will be affirmed "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). "Post-conviction

---

[2] In petitioner's pro se brief, he argues that the PCR court "overlooked several documented genuine issues of material facts regarding [his] claim of ineffective assistance of counsel." Vermont Rule of Appellate Procedure 28(a)(4) requires that an appellant's argument contain "the issues presented, how they were preserved, and appellant's contentions and the reasons for them—with citations to the authorities, statutes, and parts of the record on which the appellant relies." "Even with the 'wider leeway' afforded to pro se litigants, [petitioner's] argument does not meet the . . . standards required by [V.R.A.P.] 28(a)(4)." Wool v. Pallito, 2018 VT 63, ¶ 27 n.5, __ Vt. __, 193 A.3d 510 (quotation omitted). Petitioner fails to present genuine issues of material fact and to provide accurate citations to either the record or case law to support his arguments with any degree of specificity that would enable this Court to determine whether the arguments were adequately preserved below or briefed on appeal. This Court declines to scour the extensive record before us in order to specify, find, and support petitioner's inadequately briefed arguments. See In re S.B.L., 150 Vt. 294, 297, 553 A.2d 1078, 1081 (1988) ("We will not comb the record searching for error.").

relief is a limited remedy, intended to correct fundamental errors in the judicial process." Hemingway, 2014 VT 42, ¶ 7 (quoting In re Kirby, 2012 VT 72, ¶ 9, 192 Vt. 640, 58 A.3d 230 (mem.)). "On a petition for post-conviction relief, [the petitioner] bears the burden of proving . . . fundamental errors rendered his conviction defective." Dunbar, 162 Vt. at 211-12, 647 A.2d at 319 (quotation omitted).

I. Standard of Review for PCR Claims Based on Ineffective Assistance of Counsel

¶ 17.  Petitioner claims his conviction is defective due to the allegedly ineffective assistance he received from Attorney Maguire during trial and the PSI proceedings.  In the brief filed on behalf of petitioner by the Defender General, it is argued that this Court must apply the Amiel standard in our review, rather than the Strickland standard which the PCR court applied in the decision below.  Compare Strickland, 466 U.S. at 687-88 (finding ineffective counsel where potential conflict prejudices defendant), with Amiel v. United States, 209 F.3d 195 (2d Cir. 2000) (finding ineffective counsel where actual conflict adversely affects attorney's performance because it resulted in lapse of representation without showing of prejudice).  The State argues that petitioner did not properly preserve this claim for appeal because he did not argue below that the Amiel standard should be applied.  Further, his expert, Attorney Volk, never claimed that Attorney Maguire deliberately undermined the defense due to his conflict or that the issue required reversal regardless of whether any prejudice resulted.[3]

¶ 18.  The Strickland standard requires a two-step analysis to determine if there was a potential conflict of interest that resulted in ineffective assistance of counsel.  First, the petitioner

---

[3]  To the extent the Court can discern, petitioner appears to claim a per se rule of reversal applies.  While he did claim below that his right to counsel was violated by an attorney "with an actual conflict of interest that adversely affects the attorney's performance," he did not argue that an adverse effect should be presumed where any plausible alternative defense strategy or tactic was not pursued.  Because this argument was not made below, it has been waived for purposes of the appeal.  In re Bridger, 2017 VT 79, ¶ 8 n.2, __ Vt. __, 176 A.3d 489 (holding that argument made for first time on appeal in PCR proceeding is waived).

"must show . . . that counsel's performance fell below an objective standard of reasonableness informed by prevailing professional norms." Dunbar, 162 Vt. at 212, 647 A.2d at 319 (citing Strickland, 466 U.S. at 687-88). Then, if the petitioner meets that burden, they must "show that [counsel's] deficient performance prejudiced the defense." Strickland, 466 U.S. at 687. To prove the required prejudice, the petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." In re LaBounty, 2005 VT 6, ¶ 7, 177 Vt. 635, 869 A.2d 120 (quoting Strickland, 466 U.S. at 694). Further, "[a] reasonable probability is a reasonable chance and not merely an abstract possibility." In re Towne, 2013 VT 90, ¶ 8, 195 Vt. 42, 86 A.3d 429 (quotation omitted).

¶ 19. This Court has consistently applied the Strickland standard during review of PCR proceedings. The standard imposes a high burden on the petitioner because "[t]rial counsel are permitted a great deal of discretion in decisions regarding trial strategy, and even the failure of that strategy is not the standard by which a reviewing court will measure trial counsel's competence." Dunbar, 162 Vt. at 212, 647 A.2d at 319. Therefore, expert testimony is generally required to show that an attorney's conduct fell below the standard of accepted practice in Vermont, except in those rare instances "[w]here a professional's lack of care is so apparent that only common knowledge and experience are needed to comprehend it." In re Grega, 2003 VT 77, ¶ 16, 175 Vt. 631, 833 A.2d 872 (mem.) (quotation omitted).

¶ 20. Under the Amiel standard, on the other hand, once a petitioner proves an actual conflict exists—as opposed to a potential conflict—the petitioner need not demonstrate prejudice, only "that some plausible alternative defense strategy or tactic might have been pursued but was not and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." Amiel, 209 F.3d at 199 (quoting U.S. v. Stantini, 85 F.3d

10

9, 16 (2d Cir. 1996)).[4]  An actual conflict exists when, during the course of representation, the attorney's and defendant's interests "diverge with respect to a material factual or legal issue or to a course of action."  Winkler v. Keane, 7 F.3d 304, 307 (2d Cir. 1993) (quoting Cuyler v. Sullivan, 446 U.S. 335, 356 n.3 (1980) (Marshall, J. dissenting)).  See also, United States v. Ellison, 798 F.2d 1102, 1106-08 (7th Cir. 1986) (finding actual conflict between lawyer and client when pursuit of client's interests would lead to evidence of attorney's malpractice).

¶ 21.    In this case, we apply the Strickland standard.[5]  Under this standard, petitioner fails to prove that any of the errors Attorney Maguire allegedly made during the course of representation satisfy both the below-professional-norms element and the prejudice element.  See Strickland, 466 U.S. at 687-88.  Even under the Amiel standard, petitioner fails to establish any lapse in representation as a result of the claimed conflict of interest—that is, Attorney Maguire's antipathy toward and fear of petitioner due to petitioner's threats.  See Amiel, 209 F.3d at 198.

---

[4]  In Amiel, the petitioner established that her attorney had "an actual conflict of interest that adversely affected the attorney's performance because it resulted in an actual lapse in representation."  Amiel, 209 F.3d at 198.  First, her attorney had an actual conflict of interest because the petitioner's mother, who was also her co-defendant, paid for the petitioner's trial counsel's fees.  Trial counsel allegedly advised the petitioner not to testify, even though testifying was purportedly in her best interests, because doing so would inculpate her mother, whom counsel sought to protect.  The court explained that, if these allegations were proven at hearing, the petitioner would be entitled to relief on the ground that trial counsel "abdicated his duty of loyalty by permitting a third party who paid his fees to influence his professional judgment in representing" the petitioner.  Id. at 199.  And second, the petitioner adequately alleged the requisite "lapse in representation" by showing her culpability could have been minimized had she testified and that trial counsel denied her that opportunity due in part to his fealty to her mother.  Id.  With an actual conflict that related to and resulted in the actual lapse in representation, the Amiel court reversed the PCR court's holding.

[5]  We decline to reject or adopt the Amiel standard because it was not argued or presented before the PCR court below and because we reach the same conclusion applying either standard.

11

¶ 22.     Applying the <u>Strickland</u> standard, we now turn to petitioner's arguments that were addressed by the PCR court and adequately raised on appeal.[6]

¶ 23.     First we address, and dismiss, petitioner's claim of ineffective assistance of counsel based on Attorney Maguire's alleged failure to select a fair jury—petitioner has failed to provide any legal argument against the PCR court's analysis or decision.  Further, as noted, Attorney Volk, petitioner's own expert, did not identify Attorney Maguire's handling of the jury draw as falling below the professional standard or prejudicing petitioner.  And, furthermore, Attorney Volk expressly stated in his deposition that Attorney Maguire's performance at voir dire was not ineffective assistance of counsel.  With this, the PCR court granted the State summary judgment on this claim.  We agree summary judgment was appropriate and thus find no error.

¶ 24.     Next, as to petitioner's claim that Attorney Maguire's failure to argue for instructions on voluntary intoxication or diminished capacity and failure to employ forensic-toxicology experts amounted to ineffective assistance of counsel, we find that again petitioner offers no argument on any perceived error by the court below.  Other than reiterating his claim that blood-test results of complainant were vital to his defense and stating that expert testimony concerning his level of intoxication could be beneficial on the issue of intent, petitioner does not address the PCR court's analysis that, even if Attorney Maguire had discussed the issues of diminished capacity and intoxication with petitioner and consulted with an analyst to determine if there was evidence to support those theories, there was no evidence that said failure to call an expert prejudiced petitioner.  The PCR court opined that the results of any opinion or report were "highly speculative at best."  The court also noted that Attorney Maguire testified that there was no indication that petitioner was intoxicated to the point that "he didn't know what was going on"

<hr />

[6]  At the outset, it must be noted that the Defender General's brief, filed on behalf of petitioner, expressly argued for this Court to apply either the <u>Amiel</u> or per se standard but did not address the four issues addressed by the PCR court below.

12

such that it would "impact the case." Finding that petitioner failed to come forward with evidence supporting his claim of prejudice, the PCR court granted the State summary judgment on this claim. We find no error.

¶ 25.  Third, we consider petitioner's argument that personal conflict and animosity which resulted in an overall lack of communication between petitioner and Attorney Maguire constituted ineffective assistance of counsel. The State asserts that personal conflict and animus is not, in and of itself, grounds for PCR because "[p]ersonal animus is not performance; it is an attitude or emotion." Instead, the State argues, this Court must determine whether Attorney Maguire's performance was deficient, and if so, whether this prejudiced the defense, not whether Attorney Maguire liked or disliked petitioner. It is clear from the record before this Court that Attorney Maguire and petitioner strongly disliked one another. However, it is also true that the law does not require appointed counsel and client to like one another. We turn to the Strickland two-prong standard.

¶ 26.  In Attorney Volk's expert report, he first addressed whether this animus resulted in Attorney Maguire's performance falling below the objective standard for reasonableness—the first prong of the Strickland test—and found that it did. He noted that "Attorney Maguire was essentially forced to continue providing representation to [petitioner], in spite of his numerous and repeated motions and oral representations to the court, both pretrial, and indeed on the very day of jury draw itself, to the effect that he could not ethically, emotionally and professionally" represent petitioner. Attorney Volk relied on Attorney Maguire's explanation of why he desired to withdraw as counsel: petitioner's numerous written and oral threats, petitioner's repeated suits against Attorney Maguire in various courts challenging his ability to practice law; and Attorney Maguire's fear of petitioner's threats. Furthermore, Attorney Volk noted that Attorney Maguire "told the presiding judge that he was not sure that he could zealously or adequately represent [petitioner] at trial." Attorney Volk then posited that because of this contentious relationship, petitioner and

13

Attorney Maguire "realistically had very few, if any, actual orderly communications with each other" and therefore "could not ever engage in meaningful, in-person communication with [petitioner] relative to trial preparation, trial tactics and options, trial testimony by [p]etitioner, and related issues."[7]

¶ 27. Attorney Volk's report then addressed the second prong of the Strickland test—whether there was a reasonable likelihood that the outcome of the proceeding would have been different but for Attorney Maguire's errors, thus undermining confidence in the outcome. Attorney Volk explained he was "unclear as to how any attorney . . . can realistically be said to have provided effective assistance of counsel to a petitioner such as [petitioner], with all of the difficulties that such representation would in all likelihood inevitably present." Nonetheless, he opined that if Attorney Maguire and petitioner had "anything even remotely resembling an adequate, appropriate attorney-client relationship, there is certainly a significant probability" that the ultimate result, "both as to [petitioner's] conviction of the charged offense, and, significantly, regarding the sentence imposed upon [petitioner] would have been different and more favorable to [petitioner] had counsel's representation been effective."

¶ 28. The PCR court concluded that petitioner could not succeed on this claim of ineffective counsel for two reasons. First, the court concluded that even if Attorney Maguire "had more effectively counseled and prepared [petitioner] for the competency examinations, testimony, and presentence interview, there is no evidence that demonstrates how [petitioner] would have done anything different in those contexts, or even that he would have been capable of behaving differently." And second, the court concluded that even though the antipathy between petitioner and Attorney Maguire "resulted in a complete breakdown in communication, [petitioner]'s own

---

[7] Concerning petitioner's actions at the PSI interview, Attorney Volk noted that petitioner refused to participate in the PSI interview until Attorney Maguire was no longer his attorney. Once Maguire's motion to withdraw was granted, petitioner did the interview, which Attorney Volk described as "essentially an unmitigated disaster from [petitioner's] perspective."

behavior was the cause of that breakdown." Therefore, the PCR court granted the State summary judgment on the claim that the animosity between petitioner and Attorney Maguire resulted in a breakdown in communication that prejudiced petitioner.

¶ 29. Based on the record before us, we conclude that the PCR court's decision was soundly based on this Court's and other courts' precedent. As the court below found, despite the animosity between attorney and client, the trial record shows that Attorney Maguire provided an adequate defense. There was nothing ineffective in the selection of the jury—even petitioner's expert found Attorney Maguire's conduct of the voir dire was not ineffective. We see no flaw. As to the claim that Attorney Maguire should have argued for instructions on diminished capacity or voluntary intoxication, petitioner's expert could not say Attorney Maguire erred by failing to request jury instructions on diminished capacity or intoxication because those instructions would not have been given based on the state of the evidence at trial. Attorney Maguire explained that he did not pursue the defense because "there was no indication that [petitioner] was so intoxicated that he didn't know what was going on" such that it would "impact the case" and because petitioner's ability to recall details did not support his assertion that he was "acutely intoxicated." Furthermore, Attorney Volk agreed that petitioner's testimony at trial was inconsistent with the state of the evidence at trial. There is nothing before this Court now which prompts us to discontinue our tradition of permitting trial counsel "a great deal of discretion regarding trial strategy." Dunbar, 162 Vt. at 212, 647 A.2d at 319. And it appears that Attorney Maguire's decision not to pursue this defense, which was based on his experience as a seasoned defense attorney and his interactions with petitioner, fell within this broad discretion. Petitioner's plan to offer intoxication results of himself and complainant was questionable at best.

¶ 30. Further, the second prong of the Strickland test was not satisfied. There is no evidence that a breakdown in communication prejudiced petitioner. In re LeClaire, No. 2008-028, 2009 WL 427336, at *3 (Vt. Feb. 4, 2009) (unpub. mem.), https://www.vermontjudiciary.org/sites/

15

default/files/documents/eo08-028.pdf [https://perma.cc/JL4R-RJSC] (holding that "there is no basis to find any reasonable probability that the outcome would have been different absent counsel's alleged deficiency" where there was no evidence "as to how [the petitioner's] testimony would have improved or differed with additional preparation"). Nothing in the record supports a conclusion that personal animosity resulting in lack of effective communication between Attorney Maguire and petitioner affected Attorney Maguire's performance at trial or resulted in a lapse of representation or failure to pursue a plausible strategy or tactic. And as the court below found, nothing in petitioner's history suggests that he would have acted, or was even capable of acting, differently if Attorney Maguire more effectively counseled and advised petitioner throughout trial preparation and trial, or that different behavior would have resulted in a different and more beneficial outcome for petitioner.

¶ 31. It is also important to note that there is no evidence that Attorney Maguire conveyed his personal animosity for petitioner to the jury at any time. Attorney Maguire's motion to withdraw was outside of the jury's presence. And, Attorney Volk did not opine that the jury was affected by any misgivings in Attorney Maguire's attitude.

¶ 32. Moreover, this Court agrees with the PCR court that it was petitioner's own behavior that caused this breakdown in the attorney-client relationship. Other courts have considered four factors in determining whether a complete breakdown in communication resulted in ineffective assistance of counsel. We adopt the following four-prong test: (1) whether the petitioner "made a timely motion requesting new counsel [or requesting leave to proceed pro se]; (2) whether the trial court adequately inquired into the matter; (3) whether the conflict between the [petitioner] and his attorney was so great that it resulted in a total lack of communication preventing an adequate defense"; and "(4) whether the [petitioner] substantially and unjustifiably contributed to the breakdown in communication." Romero v. Furlong, 215 F.3d 1107, 1113 (10th Cir. 2000) (quotation omitted). See also United States v. John Doe No. 1, 272 F.3d 116, 122-23

16

(2d Cir. 2001) (applying four-part test to evaluate whether lower court erred in denying motion to substitute counsel due to breakdown in communication and concluding that lower court's denial of motion was not in error, "particularly in light of our examination of the fourth factor and our conclusion, based on the record, that [petitioner] substantially and unjustifiably contributed to the conflict between himself and [his attorney]").

¶ 33. Regarding the first two factors of this test, this Court has already determined that the trial court "made a reasonable decision amply supported by the record" to deny petitioner's repeated motions to proceed pro se and that permitting him to do so "could potentially undercut a fundamental constitutional criminal law objective—providing a fair trial." Burke, 2012 VT 50, ¶ 28.

¶ 34. As to the third factor, while the record reflects a breakdown in communication between Attorney Maguire and petitioner, there is no evidence that it contributed to any deficiency in Attorney Maguire's representation of petitioner. Attorney Maguire testified in his deposition that, after his motion to withdraw was denied, he was able to overcome his concerns and to zealously represent petitioner at trial. He testified, "I did my very best to represent him at trial. I was prepared for trial. And I think we did a fine job in terms of presenting his defense." He continued to explain that he "didn't boot the case or not do certain things because of any acrimony between [petitioner and himself]."

¶ 35. Next, we find the fourth prong—a petitioner's contribution to the breakdown—the most critical in this case. It is clear that, despite Attorney Maguire's best attempts,[8] there was

---

[8] Attorney Maguire testified that he continued to attempt to communicate with petitioner throughout his representation of petitioner, and noted that once the jury draw began petitioner "began to work with me, and we did our best to get through it." Attorney Maguire further testified that, when speaking to petitioner about whether he should testify at trial, they had a rational conversation "in terms of [petitioner] understood what [Attorney Maguire] was saying, he understood [the] advice, and he rejected it." And finally, once trial began, Attorney Maguire testified: "I felt [petitioner] understood what I was trying to tell him. He was receptive to it. He was working with me at this point; more than he ever had actually."

virtually no possibility of maintaining a cordial attorney-client relationship with petitioner. Attorney Volk noted in his report that Attorney Maguire indicated that, throughout his representation of petitioner, petitioner was " 'always angry at him,' refused to consider his advice on not testifying and the perils of testifying at trial." Attorney Maguire also explained that petitioner refused to communicate with him throughout the final pretrial preparation period, as well as during the trial itself. This evidence, based on an extensive record of petitioner refusing to communicate or cooperate with the trial court and PCR court, amply demonstrates that the primary cause of the breakdown in communication was caused by petitioner's own behavior. As the PCR court noted, a petitioner "cannot simply manufacture a breakdown in communication and thereby give rise to a constitutional violation." Romero, 215 F.3d at 1114; see also John Doe No. 1, 272 F.3d at 124-25 (concluding that there was no ineffective assistance of counsel where petitioner "created most if not all, of the problems with [appointed counsel] by refusing to cooperate with him, acting aggressively, and making threatening gestures and remarks towards [appointed counsel]").

¶ 36. For the reasons explained above, we conclude that the personal acrimony between petitioner and Attorney Maguire did not result in ineffective of assistance of counsel. Therefore, the PCR court's decision to grant summary judgment for the State on this claim was not in error.

¶ 37. And finally, we address the claim of ineffective assistance of counsel based on Attorney Maguire's failure to introduce evidence that complainant allegedly stole items from petitioner and had allegedly made two other false complaints about sexual assault.

¶ 38. Petitioner testified at trial that after complainant left petitioner's home, petitioner discovered that his laptop computer, five $20 bills, and a kitchen knife were missing. Attorney Volk did not discuss this claim in his expert report but testified at his deposition that he "found fault" in Attorney Maguire's lack of inquiry on cross examination of complainant. But he also explained that he "definitely [was] not of the opinion that the failure of [Attorney Maguire] to

18

inquire further at trial about this [alleged theft], that that was unto itself ineffective assistance." On appeal, petitioner presents no legal argument that Attorney Maguire's failure to inquire into the alleged theft amounted to ineffective assistance of counsel. Therefore, we agree with the PCR court that the State was entitled to summary judgment on this claim.

¶ 39. Petitioner also claims that Attorney Maguire should have attempted to argue for admission of evidence that complainant allegedly made false complaints regarding sexual misconduct of two individuals—S.R. and L.W. Through a pretrial ruling, the trial court excluded evidence that complainant made false accusations that S.R. had sexually assaulted another person. It then revisited and expanded upon the reasons for its rulings in its denial of petitioner's motion for a new trial, noting that it would have to conduct a "mini-trial" on S.R.'s alleged sexual assault, which would confuse the jury and distract from the actual issues. And, under Vermont Rule of Evidence 403, the trial court concluded the probative value of petitioner's proffered evidence about complainant's alleged false statements regarding a sexual assault against a different victim was substantially outweighed by the likelihood of confusing the jury. This Court affirmed this ruling during petitioner's direct appeal. Burke, 2012 VT 50, ¶ 21 ("Here, the evidence is from an unrelated incident, a mini-trial would have been required to determine whether the third party did assault complainant's friend, and the evidence would have likely distracted the jury and confused the issues. Therefore, because the alleged false statements relate to a purported sexual assault by a third person upon a fourth person, and because the probative value is very low, it was within the trial court's discretion to exclude this evidence."). Attorney Volk opined in his expert report that this evidence "may have been admissible under an alternative theory [other than an exception to Vermont's Rape Shield Law], including pursuant to V.R.E. 404(b), 405 and 608." That possibility aside, as the PCR court pointed out, even if Attorney Maguire had so argued, "there is no reason to believe that the trial court would not have continued to exclude the evidence under Rule 403."

19

¶ 40. Petitioner alleged that complainant had also made a false accusation that L.W. had sexually assaulted another person. The PCR court accurately noted that Attorney Volk's expert report did not offer a separate opinion of the claim regarding L.W., and thus treated it as equivalent to the claim regarding S.L. There is very little evidence on the record regarding this claim, aside from petitioner's own allegations.[9] This evidence is nearly identical to the claim regarding S.R.— "the evidence is from an unrelated incident, a mini-trial would have been required to determine whether the third party did assault complainant's friend, and the evidence would have likely distracted the jury and confused the issues." Burke, 2012 VT 50, ¶ 21. Therefore, again, even if Attorney Maguire argued to admit the evidence under another theory, there is little to lead this Court to believe that the trial court would have done anything but continue to exclude it under Rule 403.

¶ 41. In conclusion, even if we were to hold that Attorney Maguire's failure to attempt to admit evidence of complainant's alleged false claims of sexual assault by a third party against another person satisfied the first prong of the Strickland test, we do not find that petitioner was prejudiced by this failure because the evidence would very likely still have been excluded by Rule 403. Petitioner has failed to raise a genuine dispute of any material fact as to the second prong of the Strickland test, and therefore the PCR court did not err in concluding that the State was entitled to summary judgment on this claim.

## II. PCR Court's Denial of Petitioner's Motion to Amend

¶ 42. Lastly, petitioner argues that the PCR court erred when it denied his motion to amend the original petition. As explained above, petitioner filed the original petition in February 2013. Following nearly three years of extensive litigation, petitioner moved to amend his petition in October 2015. In response, the State emphasized that the amended petition was thirty-four

---

[9] The State deposed L.W.'s own attorney, who claimed to have never heard of complainant.

pages long and contained ninety-six numbered paragraphs, and that Attorney Volk had already conducted an exhaustive examination of the original petition and of the record, had provided a written report, and had been deposed for over two hours concerning additional matters not contained in said written report. The State requested that petitioner explain the specific amendments by clarifying "which claims, if any, would be dropped and which claims, if any, would be added." The State explained that, following such clarification, it would be able to respond to petitioner's motion to amend. Petitioner did not provide the requested clarification. The PCR court denied petitioner's motion to amend in December 2015, explaining that even though petitioner's motion cited the law at length, the motion did not explain why the amendment was required nearly three years after the original petition was filed.

¶ 43. Vermont Rule of Civil Procedure 81(a) explains that "[t]hese rules do not alter the practice prescribed by the statutes of the State of Vermont for commencing and conducting proceedings for review of sentence under 13 V.S.A. §§ 7131-7137 or for a writ of habeas corpus." Further, Rule 81(a) mandates that "[i]n respects not covered by statute, the practice in these proceedings shall conform to these rules, except that discovery shall be used only by order of the court on motion for good cause shown." Title 13, §§ 7131 through 7137, which govern PCR proceedings, are silent on the procedure required for amended and supplemental petitions or pleadings, and therefore Vermont Rule of Civil Procedure 15 applies.

¶ 44. Rule 15(a) states:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 21 days after it is served. Otherwise a party may amend the party's pleading only by leave of the court . . . and leave shall be freely given when justice so requires.

¶ 45. Because the PCR procedures outlined in §§ 7131-7137 do not require or expressly permit the State to respond to a filed petition, Rule 15(a) requires that a petitioner amend their

petition within twenty-one days after it is "served upon the state's attorney and attorney general," 13 V.S.A. § 7133, or by leave of the court. Therefore, because petitioner sought to amend his petition more than twenty-one days after the original petition was served, petitioner was required to request leave to amend his petition, as he did, and the court could grant an amendment if justice so required.

¶ 46. It is well established that this Court reviews a court's decisions on Rule 15 amendments for abuse of discretion. See LeClair v. LeClair, 2017 VT 34, ¶ 27, 204 Vt. 422, 169 A.3d 743. The Court will reverse for abuse of discretion where it finds that the PCR court "failed to exercise its discretion, or that its discretion was exercised on reasons clearly untenable, or to an extent clearly unreasonable." Obolensky v. Trombley, 2015 VT 34, ¶ 43, 198 Vt. 401, 115 A.3d 1016 (quotation omitted). Furthermore, we keep in mind the three underlying principals of our liberal pleading standards: first, "to provide maximum opportunity for each claim to be decided on its merits rather than on a procedural technicality"; second, "to give notice of the nature of the claim or defense"; and third, "to enable a party to assert matters that were overlooked or unknown to him at an earlier stage in the proceedings." Bevins v. King, 143 Vt. 252, 255, 465 A.2d 282, 283 (1983). Therefore, "[w]hen there is no prejudice to the objecting party, and when the proposed amendment is not obviously frivolous nor made as a dilatory maneuver in bad faith, it is an abuse of discretion to deny the motion." Gauthier v. Keurig Green Mountain, Inc., 2015 VT 108, ¶ 43, 200 Vt. 125, 129 A.3d 108 (quotation omitted).

¶ 47. Applying these principles, we find no abuse of discretion. First, the State would suffer prejudice if petitioner was permitted to amend his petition at that late stage in the proceedings. In the context of this case—with five years of litigation prior to trial, three years of litigation surrounding petitioner's PCR petition, nearly one hundred motions in the PCR litigation itself, many of which can be described as quite lengthy and repetitive, hours of depositions, and hours more spent interpreting and responding to petitioner's extensive motion practice—

22

permitting amendment and thereby requiring the State to determine the exact nature of the proposed changes and then respond to those changes would impose an undue burden on said party and result in further delay in this already extended litigation. Second, based on petitioner's history of significant, and repeated, motion practice and the length and lack of clarity of the proposed amendment, it also cannot be said that "the proposed amendment [was] not obviously frivolous nor made as a dilatory maneuver in bad faith." As the PCR court noted in its order denying the motion, petitioner's motion did not indicate any reason why justice required the amendment at this late stage in litigation. The PCR court did not abuse its discretion when it denied petitioner's motion to amend the original petition.

Affirmed.

FOR THE COURT:

_____

Associate Justice

23